IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Steve Edwards; Anthony Raul Sanchez; and E&S Enterprises, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>The City of Dillon, South Carolina; Benny Genwright, in his Official Capacity and in his Individual Capacity; Montey Grey; and Doug Miller,<br><br>Defendants. | Civil Action No. 4:24cv4770- JD<br><br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL REQUESTED** |

For their Complaint against Defendants City of Dillon, South Carolina, Benny Genwright, in his Official Capacity and in his Individual Capacity, Montey Grey, and Doug Miller, Plaintiffs Steve Edwards, Anthony Raul Sanchez, and E&S Enterprises, LLC allege as follows:

### I.     Nature of the Case

1.      Plaintiffs purchased a property in The City of Dillon, with promises from the City that Plaintiffs would be able to take advantage of the Historic Grant Preservation Program to revitalize a critical component of downtown. Instead, at every turn they were extorted and victimized by local contractors while City officials looked the other way and permitted flagrant violations of the Grant program. When Plaintiffs stood firm against these practices, their permits were pulled and the City made them stop all work. The building continues to fall further into disrepair and Plaintiffs' investment suffers daily.

### II.     The Parties

2.      Plaintiffs Steve Edwards and Anthony Raul Sanchez are citizens and residents of California, and principals of E&S Enterprises, LLC.

3.  Plaintiff E&S Enterprises, LLC is a limited liability company organized under the laws of the State of Delaware, having its corporate headquarters in California. It is primarily a marketing company.

4.  Defendant City of Dillon is a municipality in the State of South Carolina.

5.  Defendant Benny Genwright is Director of Code Enforcement and Planning for the City of Dillon. At all times material hereto and upon information and belief, he was acting in his Official Capacity, although some of his actions at times and alternatively constituted actual fraud or actual malice. Upon information and belief, he is a citizen and resident of South Carolina.

6.  Defendant Montey Grey is a general contractor in the City of Dillon. Upon information and belief, he is a citizen and resident of South Carolina.

7.  Defendants Doug Miller is a plumbing contractor in the City of Dillon. Upon information and belief, he is a citizen and resident of South Carolina.

### III.  Jurisdiction and Venue

8.  Plaintiffs Mr. Edwards and Mr. Sanchez are citizens of the State of California.

9.  Plaintiff E&S Enterprises is a citizen of the State of Delaware and the State of California pursuant to 28 U.S.C. § 1332(c).

10. Defendant City of Dillon is a citizen of South Carolina for purposes of 28 U.S.C. § 1332. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 97 (1972).

11. Defendants Mr. Genwright, Mr. Grey, and Mr. Miller are citizens of the State of South Carolina.

12. Plaintiffs claim damages in excess of $75,000, as set forth more fully below.

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

14. The Court also jurisdiction under 28 U.S.C. § 1331 as the claim under 42 U.S.C. § 1983 creates a federal question.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### IV.     General Allegations

16. The parties hereto, and the subject matter hereof, are within the jurisdiction of this Court.

17. Plaintiffs re-allege and incorporate herein by reference all of the above allegations, and the below paragraphs are asserted upon information and belief.

*Property's Procurement*

18. In early 2023, Plaintiffs Steve Edwards and Anthony Raul Sanchez, through their business, Plaintiff E&S Enterprises, purchased 111 North Railroad Avenue in the City of Dillon (hereinafter referred to as "the Property").

19. The Property was purchased with the intent to help revitalize downtown using the Historic Preservation Grant, a grant of up to $50,000 in reimbursed funds designed to assist local business owners with property repairs.

20. Like so many buildings downtown, the Property was defunct and effectively condemned. City officials encouraged Mr. Edwards and his business partner, Mr. Sanchez, to move forward.

21. Mr. Edwards and Mr. Sanchez purchased the Property through E&S Enterprises, with plans to turn the building into a hotel and living space to help revitalize downtown Dillon.

*Introduction to Defendants Genwright and Grey*

22. At the project's inception, Mr. Edwards worked with Defendant Genwright, Director of Code Enforcement and Planning for the City of Dillon.

23. Defendant Genwright explained that Mr. Edwards would be required to hire a general contractor to procure a building permit. As Mr. Edwards was researching possible general contractors, Defendant Genwright informed Mr. Edwards he had found a contractor: Defendant Montey Grey.

24. Defendant Genwright personally introduced Mr. Edwards to Defendant Grey and arranged their first meeting just outside Defendant Genwright's office.

25. In that first meeting, Defendant Grey told Mr. Edwards he would procure the necessary building permits, but that he would not actually do any work. It would be Mr. Edwards's responsibility to procure workers and ensure their work was completed.

26. Further, Defendant Grey told Mr. Edwards he would need $1,000 cash to make this happen. Mr. Edwards had little options given he had made a six-figure investment, was not well-versed in commercial construction, and the primary person responsible for Dillon's City Code Enforcement had brokered this meeting. Defendant Grey would demand another $1,000 before procuring the permit. These amounts are far in excess of the actual cost of a building permit in the City of Dillon.

27. Defendant Genwright was aware that Defendant Grey was simply selling his name, and not performing any work related to the Property.

28. Although the Historic Preservation Grant required at least two quotes for general contractors, Defendant Genwright moved forward with only the "quote" from Defendant Grey.

29. As he had been directed by Defendant Grey, Mr. Edwards worked on his own to contact individuals to assist with renovation. At no point did Defendant Grey perform the work of a general contractor – he would only occasionally recommend contractors to Mr. Edwards.

30. In early April 2023, Mr. Edwards met with Defendant Genwright and others to review various bids for compliance as was required by the Historic Preservation Grant Program. Despite the requirement of a general contractor, Defendant Grey was not present.

31. Defendant Grey's only role in the bid review meeting was this: Defendant Genwright discovered that a roofer, whose bid was not viable because the company was not licensed, was recommended by Defendant Grey. Defendant Genwright immediately spoke to Defendant Grey by phone, and within minutes Defendant Grey sent a bid on his own letterhead in a format that was identical to the original roofer's bid. Defendant Genwright replaced the roofing bid in the packet, approved the bid, and the original roofer did the work with no oversight from Defendant Genwright.

*Introduction to Defendant Miller*

32. Mr. Edwards also found a contractor for plumbing and electrical work: Defendant Miller. For $1,000, Defendant Miller agreed to procure both the plumbing and electrical permits even though Defendant Miller provided no oversight for the electrical projects.

33. Defendant Miller told Mr. Edwards that he knew multiple bids were required as part of the Historic Preservation Grant Program. However, Defendant Miller procured his own competing bids as to plumbing and electrical to present to City officials. Ultimately, Defendant Genwright approved Defendant Miller's bids and issued plumbing and electrical permits.

*Extortion, City Inaction, and Project Shutdown*

34. In approximately May 2023, Defendant Genwright informed Mr. Edwards that Mr. Edwards could not be reimbursed for any of Defendant Miller's work because Defendant Miller had started the job in late April and earlier than noted in the Historic Preservation Grant application.

35. However, the application submitted by Mr. Edwards and the permits issued by Defendant Genwright noted a late-April start date, and Defendant Genwright had indicated Mr. Edwards could start work in April 2023. Further, the express terms of the Historic Preservation Grant program permitted reimbursement for work *completed* after approval.

36. Defendant Genwright and another City official informed Mr. Edwards in or around June 2023 that he could instead be reimbursed for the work supposedly performed by Defendant Grey.

37. Shortly thereafter, on June 11, 2023, Defendant Grey approached Mr. Edwards at night, and at a separate business operated by Mr. Edwards.

38. He told Mr. Edwards that a prior flooring quote for $8,132.01, which Mr. Edwards had procured himself, needed to be submitted on his letterhead – presumably so Defendant Grey could claim credit and receive pay for work performed by others, which would in turn be reimbursed by Grant funds.

39. Defendant Grey handed Mr. Edwards a folded piece of paper with the exact same flooring work, with a small addition of cabinets and countertops, for $46,000 – 565% more than Mr. Edwards's prior bid for almost the same work and nearly the limit of the Grant reimbursement cap.

40. Mr. Edwards informed Defendant Genwright the following morning about this development. Defendant Genwright was unfazed and said he would look into the matter.

41. A short time later, Mr. Edwards and Mr. Sanchez were summoned to the Property where they encountered Defendant Genwright and others, including the current Mayor. Defendant Genwright stated that Defendant Grey was going to rescind the permits issued to Mr. Edwards, and that Mr. Edwards's issues with Defendant Grey were civil matters. At that meeting, Plaintiffs

reiterated the scope of Defendant Grey's misconduct to City officials and City officials told Plaintiffs they would figure out a path forward with them.

42. After the meeting with Defendant Genwright, Defendant Miller reached out to Mr. Edwards. Defendant Miller said he had talked to Defendant Grey and that Defendant Grey was willing to reprocure Mr. Edwards's permits for $5,000 in cash.

43. City Officials never worked with Plaintiffs to remedy any issues and in fact sent correspondence that Plaintiffs were no longer eligible for the Historic Preservation Grant.

44. As Mr. Edwards moved into the ensuing months, he tried in vain to move the now-shuttered project forward without paying kickbacks or responding to extortive demands.

45. In one example, he procured the necessary planning for a City-required sprinkler system, including approval of the plan by the State Fire Marshall. The City has refused to run a line from the end of the Property to the City's main line.

46. In another example, in approximately May 2024, Mr. Edwards noticed an air conditioning system was stolen. The City refused to issue a permit to the contractor Mr. Edwards attempted to hire to replace the stolen units.

47. City officials have refused to have any meeting with Mr. Edwards, despite requests since October through his counsel for a meeting. City officials have also refused to reimburse the amounts of any work performed under the Historic Preservation Grant program and have issued a stop-work order on the Property.

48. Plaintiffs have been injured substantially as a result of these actions.

## V. Causes of Action

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 as to Defendants City of Dillon**
**and Genwright in his Individual Capacity)**

49. Plaintiffs restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

50. The Constitutional rights actionable pursuant to 42 U.S.C. § 1983 include a Fourth and Fourteenth Amendment due process right against state action that unreasonably deprives an individual of property.

51. The above acts set forth deprivation of Plaintiffs' property without due process or compensation.

52. Defendants, acting together and under color of state law, meaningful interfered with Plaintiffs' possessory interests of the Property, and deprived Plaintiffs of such interest, from at least June 2023 to present, for which the Defendants are liable for damages and attorney's fees.

**SECOND CAUSE OF ACTION**
**(Negligence and Gross Negligence as to Defendants City of Dillon and Genwright)**

53. Plaintiffs restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

54. At all times relevant herein, Defendant City of Dillon, by and through its employees and agents including Defendant Genwright, had a duty to exercise reasonable care in all aspects relating to the administration of the Historic Grant Preservation Program, in the permitting of building renovation and construction, in the permitting of the Property itself, and in their dealings with Plaintiffs.

55. Defendants breached this duty in numerous ways, including but not limited to

    a. failing to properly administer the Historic Grant Preservation Program;

    b. failing to properly oversee the licensing of contractors and other permitted entities;

    c. failing to properly investigate allegations of misconduct and wrongdoing by contractors and other permitted entities;

    d. violating, or allowing to be violated, various statutes and ordinances of the State of South Carolina; and

    e. failing to exercise that degree of care and caution which a reasonable and prudent person or entity would have exercised under the circumstances then and there prevailing.

56. Defendant Genwright additionally, and alternatively, breached this duty in other numerous ways, including but not limited to

    a. breaching a duty of public concern willfully and/or dishonestly; and

    b. failing to properly and faithfully discharge a duty imposed by law.

57. Plaintiffs' injuries were a direct and proximate cause of Defendants' multiple acts of negligence, gross negligence, recklessness, and willfulness.

58. Defendants breached their duty to Plaintiffs by and through multiple separate and independent occurrences to be proven at trial and decided by the jury in this action.

### THIRD CAUSE OF ACTION
### (Negligence and Gross Negligence as to Defendants Grey and Miller)

59. Plaintiffs restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

60. At all times relevant herein, Defendants Grey and Miller had a duty to exercise reasonable care in all aspects relating to the permitting, renovation, and construction of the Property and in their dealings with Plaintiffs.

61. Defendants breached this duty in numerous ways, including but not limited to

    a. failing to properly follow rules and regulations related to the Historic Grant Preservation Program;

    b. failing to properly follow rules and regulations related to permitting and construction in the City of Dillon;

    c. violating, or allowing to be violated, various statutes and ordinances of the State of South Carolina; and

    d. failing to exercise that degree of care and caution which a reasonable and prudent person or entity would have exercised under the circumstances then and there prevailing.

62. Plaintiffs' injuries were a direct and proximate cause of Defendants' multiple acts of negligence, gross negligence, recklessness, and willfulness.

### FOURTH CAUSE OF ACTION
### (Negligent Supervision, Negligent Training, Negligent Retention as to Defendant City of Dillon)

63. Plaintiffs restate and incorporate by reference each of the above paragraphs as if fully set forth herein.

64. Defendant City of Dillon, by and through its employees and agents with supervisory authority, owed statutory and common law duties to the public at large, and to Plaintiffs in particular, to refrain from negligently supervising, training, and/or retaining employees.

65. Defendants breached this duty in numerous ways, including but not limited to

    a. upon information and belief, Defendant knew or reasonably should have known that its employees and agents did not have the proper training, education, and/or temperament meet generally accepted standards in permitting and code enforcement to the detriment of the public and to Plaintiffs;

    b. negligently hiring, monitoring, and retaining employees, including but not limited to Defendant Genwright;

    c. failing to properly train and/or supervise employees, including but not limited to Defendant Genwright; and

    d. failing to follow its own policies and regulations relating to permitting and the Historic Grant Preservation Program.

66. Plaintiffs' injuries were a direct and proximate cause of Defendants' multiple acts of negligence, gross negligence, recklessness, and willfulness.

67. Defendants breached their duty to Plaintiffs by and through multiple separate and independent occurrences to be proven at trial and decided by the jury in this action.

### VI.   Prayer for Relief

68. WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendants on all counts, providing the following relief:

    a. specific performance;

    b. actual, compensatory, and consequential damages;

    c. judgment and post-judgment interest at the lawful rate;

    d. attorneys' fees and costs,

    e. punitive damages; and/or

    f. such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Derek A. Shoemake
Derek A. Shoemake (No. 10825)
derek@lawconnell.com
CONNELL LAW FIRM
20 Townlee Lane, Suite A
Lugoff, SC  29078
(803) 408-8500 (telephone)
(803) 427-4929 (cellphone)
(803) 408-8888 (facsimile)

August 29, 2024